UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                                        :
WAJILAM EXPORTS (SINGAPORE) PTE. LTD,  :
                                                        :
                            Plaintiff,          :
                                                        :            05 Civ. 7955 (GEL)
            -v-                                   :
                                                        :            **OPINION AND ORDER**
ATL SHIPPING LIMITED and SISTINA    :
SHIPPING LTD.,                             :
                                                        :
                            Defendants.    :
                                                        :
-------------------------------------------------------------x

James P. Rau, Cardillo & Corbett, New York, New York,
for Plaintiff Wajilam Exports (Singapore) Pte. Ltd.

Keith W. Heard, Burke & Parsons, New York, New York,
for Defendants Via Sistina Shipping, Ltd.


GERARD E. LYNCH, District Judge:

       Defendant Via Sistina Shipping, Ltd. ("Via Sistina")[1] seeks to vacate maritime

attachments and to dismiss the Amended Verified Complaint ("the Complaint") pursuant to

Federal Rules of Civil Procedure 12(b)(6), for failure to state a claim, and 12(b)(2), for lack of

personal jurisdiction.  The motions will be denied.

                            **BACKGROUND**

       This is a maritime action between plaintiff Wajilam Exports (Singapore) Pte. Ltd.

("plaintiff") and defendants ATL Shipping Limited, a company based in the British Virgin

---

[1] In the Amended Verified Complaint, this entity is referred to as "Sistina Shipping Ltd.",
Compl. ¶ 5, but the parties now appear to agree that its correct name is "Via Sistina Shipping
Ltd."  (See Order to Show Cause, at 1; Pl. Br. at 1.)  This opinion will use the latter version of
the name.

Islands ("ATL-BVI"), and Via Sistina.  Plaintiff claims that ATL-BVI failed to pay $540,844.50 in freight[2] and other charges it owed plaintiff pursuant to a charter party under which plaintiff chartered to ATL-BVI a vessel known as the M/V Qing Ann for a voyage from Myanmar to China with a cargo of logs.  (Compl. ¶¶ 6, 17.)  Plaintiff further alleges that there exists "such unity of ownership and interest between [ATL-BVI] and [Via Sistina] that no separation exists between them," and that ATL-BVI's corporate veil should be pierced and Via Sistina held liable under the charter party.  (Compl. ¶¶ 19-20.)

On March 14, 2006, plaintiff sought and obtained from this Court an ex parte Order for Process of Maritime Attachment and Garnishment pursuant to Admiralty Supplemental Rule B(1), directed to a number of New York banks including garnishee J.P. Morgan Chase Manhattan Bank ("J.P. Morgan").  See Fed. R. Civ. P.,  Supp. Adm. R. B(1).  Later that month, funds belonging to Via Sistina and worth $277,638.68 were attached while temporarily in the possession of J.P. Morgan during electronic fund transfers ("EFTs").  (D. Br. at 2.)  See Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 436 (2d Cir. 2006) ("Under the law of this circuit, EFTs to or from a party are attachable by a court as they pass through banks located in that court's jurisdiction.").

On June 20, 2006, Via Sistina moved the Court by Order to Show Cause to (1) vacate the attachment of Via Sistina's property and (2) dismiss the Complaint as to Via Sistina for failure to state a claim and lack of personal jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(2).  On June 29, 2006, both parties appeared at a hearing pursuant to

---

[2] "Freight" in this context means the compensation paid to a carrier for transporting goods.

2

Admiralty Supplemental Rule E(4)(f).  See Fed. R. Civ. P., Adm. Supp. R. E(4)(f).

## DISCUSSION

### I.   Standards for Motions to Dismiss

Via Sistina's motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6),

12(b)(2), and 9(b) will be treated as a motion for judgment on the pleadings pursuant to Rule

12(c) because Via Sistina filed its Verified Answer prior to making these motions.[3]  See Fed. R.

Civ. P. 12(b) ("A motion making any of these defenses shall be made before pleading if a further

pleading is permitted.")"; Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126

(2d Cir. 2001) ("[A] motion to dismiss for failure to state a claim (or one of the other

non-waivable defenses under Rule 12(h)) that is styled as arising under Rule 12(b) but is filed

after the close of pleadings, should be construed by the district court as a motion for judgment on

the pleadings under Rule 12(c).").[4]

In light of Via Sistina's submissions of various supporting documents, plaintiff asks the

Court to convert the motion to one for summary judgment.  See Fed. R. Civ. P. 12(c) (requiring

that where "matters outside the pleadings are presented to and not excluded by the court, the

---

[3] Via Sistina asks that the Court "treat [its] motion, brought on by Order to Show Cause, simply as one to vacate the attachments under Fed. R. Civ. P. Supplemental Rule E(4)(f) and as a motion under Rule 9(b) to dismiss the Amended Verified Complaint for failure to plead circumstances constituting fraud with particularity."  (D. Reply at 2.)  As the Second Circuit has noted, however, "by its terms, Rule 9(b) does not explicitly provide for a dismissal motion." Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 125 n.4 (2d Cir. 2001).  A motion to dismiss citing Rule 9(b) should therefore generally be construed as a motion to dismiss pursuant to Rule 12(b)(6).

[4] Although lack of personal jurisdiction is not a "non-waivable defense under Rule 12(h)," Patel, 259 F.3d at 126, the defense has not been waived, as it was raised in the Verified Answer.  (Answer ¶ 33.)  Accordingly, Via Sistina's untimely motion to dismiss for lack of personal jurisdiction may also be considered as part of a motion for judgment on the pleadings.

motion shall be treated as one for summary judgment"). Although conversion to a summary judgment motion is necessary where a court elects to consider matters outside the pleadings, the decision whether to convert is a matter for the court's discretion. See Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988). That discretion will not be exercised here. Discovery has not begun yet, as plaintiff itself complains. (P. Mem. at 2, 8.) There would be little point in considering a summary judgment motion when significant relevant facts may yet be discovered.

Accordingly, the motion for judgment on the pleadings will be considered under the familiar standards of review, disregarding material submitted by Via Sistina that is extraneous to the Complaint, accepting the allegations contained in the Complaint as true and drawing all reasonable inferences in favor of the plaintiff. See Greco v. Trauner, Cohen & Thomas, L.L.P., 412 F.3d 360, 363 (2d Cir. 2005). The complaint will not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would entitle it to relief. Id.

## II.    Standards for Vacatur of Attachments

Rule E hearings are potentially broad in scope. "Rule E(4)(f) is designed to satisfy the constitutional requirement of due process by guaranteeing to the shipowner a prompt post-seizure hearing at which he can attack the complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings." Fed. R. Civ. P., Adm. Supp. R. E(4)(f), Advisory Committee's Note. Rule E thus allows challenges not only to the complaint itself, but to the adequacy of service, the amount of security, and other related matters. The Second Circuit has recently clarified the Rule E(4)(f) inquiry, holding that the burden is on the plaintiff to make four basic showings:

4

> [A]n attachment should issue if the plaintiff shows that 1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment.

Aqua Stoli, 460 F.3d at 445.

In this case, Via Sistina does not argue that it can be found within the district, and essentially concedes that it cannot be found by arguing that jurisdiction rests entirely on the attachment.  (D. Mem. at 17-18.)  Its property has been found (and attached) in the district, and Via Sistina raises no statutory or maritime law bar to the attachment other than the comity argument addressed below.  The only issue that remains is whether plaintiff has shown a "valid prima facie admiralty claim" against Via Sistina.

The standard generally applied in a Rule E(4)(f) analysis is that the plaintiff must demonstrate that "reasonable grounds" exist for the attachment.  Ullises Shipping Corp. v. FAL Shipping Co., 415 F. Supp. 2d 318, 322-23 (S.D.N.Y. 2006), overruled on other grounds by Aqua Stoli, 460 F.3d at 445.[5]  The "reasonable grounds" standard involves review not only of

---

[5] The Circuit in Aqua Stoli had no occasion to clarify the "valid prima facie admiralty claim" inquiry or the "reasonable grounds" standard.  Prior to Aqua Stoli, various district courts within this Circuit had struggled to clarify whether "some showing beyond the prima facie case is required."  See, e.g., Seaplus Line Co. v. Bulkhandling Handymax AS, 409 F. Supp. 2d 316, 319 (S.D.N.Y. 2006).  Specifically, district courts disagreed on the meaning of the requirement that plaintiff show "reasonable grounds" for the attachment.  See Ullises Shipping, 415 F. Supp. 2d at 322-23 (S.D.N.Y. 2006); Maersk, Inc. v. Neewra, Inc., 443 F. Supp. 2d 519, 527 (S.D.N.Y. 2006); Blake Maritime, Inc. v. Petrom S.A., 2005 WL 2875335, at *2 (S.D.N.Y. 2005) (S.D.N.Y. 2005).  For some courts, this inquiry focused on whether a plaintiff had shown need for the attachment, see Seaplus, 409 F. Supp. 2d at 319, while other courts also imposed a balancing test weighing the burden on the defendant against the benefit to the plaintiff.  See Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 384 F. Supp. 2d 726, 729 (S.D.N.Y. 2005).  In Aqua Stoli, the Second Circuit rejected the imposition of a balancing test, and also apparently the imposition of a "needs" test.  460 F.3d at 445.  It did not, however, discuss whether its

5

the adequacy of the allegations in the complaint, but also of any evidence submitted by the parties. "When determining whether . . . reasonable grounds exist, 'Supplemental Rule E does not restrict review to the adequacy of the allegations in the complaint.' A court also may consider any allegations or evidence offered in the parties' papers or at the post-attachment hearing." Maersk, Inc. v. Neewra, Inc., 443 F. Supp. 2d 519, 527 (S.D.N.Y. 2006), quoting Linea Navira De Cabotaje, C.A. v. Mar Caribe De Navegacion, C.A., 169 F. Supp. 2d 1341, 1358 (M.D. Fla. 2001).

Although review of extraneous evidence is appropriate, plaintiffs in a Rule E(4)(f) proceeding should not be required to prove their case.[6] Discovery has not yet been had, and it would defeat the purpose of attachment — preserving defendants' assets in case plaintiff is able to prevail at trial or on summary judgment — to require at this stage that plaintiffs asserting a "valid prima facie maritime claim" prove that the facts in the complaint are true. See Japan Line, Ltd. v. Willco Oil Ltd., 424 F. Supp. 1092, 1094 (D. Conn. 1976) (Newman, J.) (holding that where attachment is based on a fraud theory of veil-piercing, plaintiff should not be required to allege fraud with particularity before discovery); Sea-Terminals, Inc. v. Independent Container Line, Ltd., 1989 WL 222634, at *2 (D. Del. 1989) (holding that whether the defendant "is a totally separate and unrelated company" from the company directly liable to plaintiff should not be decided "until the facts are fully fleshed out after discovery"). "A rule E(4)(f) hearing is not

---

holding had any impact on the "reasonable grounds" inquiry as it relates to the "valid prima facie claim" analysis.

   [6] If the parties choose, a motion for summary judgment may be made simultaneously with an application to vacate an attachment. See, e.g., Mar. Ventures Int'l, Inc. v. Caribbean Trading & Fid., Ltd., 689 F.Supp. 1340, 1348 (S.D.N.Y. 1988).

intended to definitely resolve the dispute between the parties, but only to make a preliminary determination of whether there are reasonable grounds for issuance of the arrest warrant."  North of England Protecting and Indem. Ass'n v. M/V Nara, 1999 WL 33116416, at *2 (E.D. La. 1999).

Accordingly, courts have compared the showing required in a "reasonable grounds" analysis to the more familiar standard of probable cause.  See, e.g., Amstar Corp. v. S/S Alexandros T., 664 F.2d 904, 912 (4th Cir. 1981) ("A shipowner challenging the validity of an arrest is constitutionally entitled to a prompt post-arrest hearing in which the plaintiff has the burden of showing probable cause for the arrest").  The Supreme Court, interpreting the phrase "reasonable grounds" as used in a criminal statute, has said that "[t]he terms "probable cause" as used in the Fourth Amendment and 'reasonable grounds' . . . are substantial equivalents of the same meaning."  Draper v. United States, 358 U.S. 307, 311 (1959).  Probable cause is less than a preponderance of the evidence; in the criminal context, it has been described as a "fair probability" that the asserted fact is true.  Illinois v. Gates, 462 U.S. 213, 214 (1983).  With this standard in mind, courts in Rule E(4)(f) hearings have emphasized that their conclusions are "merely holding that it is *likely*" that alleged facts are true.  See North of England Protecting and Indem. Ass'n, 1999 WL 33116416, at *3.

Via Sistina makes two principal arguments as to why plaintiff has failed to show reasonable grounds for the attachment.  First, it attacks the Complaint's allegation that ATL-BVI was party to the charter, arguing that in fact a separate company called "ATL Shipping, Ltd.–Shanghai" ("ATL-Shanghai"), not ATL-BVI, is indebted to plaintiff under the charter party.  Second, Via Sistina argues that allegations in the Complaint supporting plaintiff's attempt

to pierce the corporate veil between it and either ATL entity are inadequate and that the evidence

to support those allegations is also insufficient.   In short, Via Sistina argues that plaintiff is

attempting to pierce the wrong corporate veil, and in the alternative that the veil may not be

pierced.

### III.    <u>Identity of the Indebted Party</u>

The Complaint alleges that plaintiff chartered the Qing Ann to "ATL Shipping Ltd.,"

which it alleges to be a British Virgin Islands Corporation.  (Compl. ¶¶ 4, 6.)  According to Via

Sistina, plaintiff actually chartered the ship to a Chinese corporation known as "ATL Shipping,

Ltd.–Shanghai."  (D. Mem. at 3.)  In support of this contention, Via Sistina submits a document

that it identifies as a "Final Fixture Recap" memorializing the agreement between plaintiff and

ATL-Shanghai.  (Cui Aff. Ex. H.)  This "Final Fixture Recap" appears to be an email message

that concerns the chartering of the Qing Ann and identifies "Wajilam Exports (singapore)pte ltd

– as disponent owners" and "ATL Shipping Ltd, Shanghai – as charterers."  (<u>Id</u>.)  Via Sistina

also points to a May 21, 2005 "Fixture Note" that appears to be a charter agreement concerning

the Qing Ann between "M/S Wajilam Exports (Singapore) Pte Ltd." and "M/S ATL Shipping,

Limited, Shanghai."  (<u>See</u> Cui Aff. Ex. I.)  It is, however, unsigned.  That document, however,

which Via Sistina asserts "contains the full and final agreement of the parties to the form of the

charter"  (D. Mem. at 3), is unsigned.

Plaintiff argues that ATL-Shanghai subsequently proposed amendments to this charter

which changed the charterer to ATL-BVI.  (2d McNamara Aff. ¶ 2.)  In support of this claim, it

provides an email dated May 28, 2005, from ATL-Shanghai to the charter broker, which

indicates that there has been an amendment to the charter; the attached fixture identifies the

relevant party as "ATL SHIPPING LIMITED," a company with an address in the British Virgin Islands. (Id. Ex. 3.)  This document, however, is also unsigned.  Via Sistina asserts that the relevant amendment was never adopted.  (D. Reply at 2.)  In short, there is a substantial factual question on the issue of whether the charter was amended to make ATL-BVI the counterparty.

Via Sistina also points to a number of other documents showing that the plaintiff attempted to recover money from ATL-Shanghai (see D. Reply. at 4-5), including a document it identifies as a Debit Note, dated July 15, 2005, which plaintiff sent to ATL-Shanghai demanding detention charges relating to the MV Qing Ann (see Walsh Aff. Ex. A.).  This document references the May 21, 2005 Fixture Note. (Id.)  Via Sistina also notes that plaintiff at one point demanded arbitration with ATL-Shanghai, rather than ATL-BVI.  (D. Reply at 4; see Cui Aff. Ex. L.)  In response, plaintiff submit statements claiming that it withdrew this request for arbitration when it realized that ATL-BVI, not ATL-Shanghai, was the proper party.  (Ashhab Aff. ¶¶ 3-10.)

As further evidence that ATL-Shanghai is the party indebted to plaintiff, Via Sistina submits documents from a proceeding involving plaintiff in the Wuhan Maritime Court of the People's Republic of China.  It appears from these documents that plaintiff was the respondent in a maritime action brought by a company known as Butet Shipping, which asked the Wuhan court for "property preservation measures" — apparently a procedure similar to attachment.  The Wuhan court stated that plaintiff had "credit of USD $351,754.61, being freight due from ATL Shipping Ltd.-Shanghai."  (Cui Aff. Ex. J.)  It directed ATL-Shanghai to pay this debt into the accounts of the court or of Butet, the claimant, rather than to plaintiff, as security.  (Id.)  Via Sistina also submits a receipt appearing to indicate that ATL-Shanghai did indeed pay the

charges into the account of the Wuhan court.  (Cui Aff. Ex. K.)  These documents appear to show that a court in China believed ATL-Shanghai, not ATL-BVI, was the counterparty, and may even suggest that plaintiff acted as though it were, but they are not direct evidence of the parties' intent at the time of the charter party.

The evidence, in short, conflicts.  Questions of credibility and the authenticity of documents may play an important role in resolving the question of whether ATL-BVI is in fact the indebted party.  While Via Sistina's evidence suggests that plaintiff has, at various points after the execution of the charter party, acted as though it believed ATL-Shanghai was the indebted party, it does not show whether plaintiff was correct in this belief.  Indeed, plaintiff has offered evidence suggesting it was simply confused; the affidavit of its attorney states that plaintiff originally asked him to pursue ATL-Shanghai, and only after he examined the documents and realized ATL-BVI was in fact the indebted party did plaintiff change course.  (Ashhab Aff. ¶¶ 7-10.)  Moreover, the documents themselves raise significant issues of fact concerning whether an amendment replacing ATL-Shanghai with ATL-BVI took effect.  Therefore, in light of the fact that plaintiff's burden is not to prove by a preponderance of the evidence that it is entitled to relief, but merely to show reasonable grounds for an attachment, the appropriate course is to allow discovery to go forward and give the parties an opportunity to prove their versions of the facts.[7]  Accordingly, plaintiff's showing on the identity of the

---

[7] Via Sistina also argues that plaintiff should be estopped from arguing that the charterer was ATL-BVI due to representations to the Chinese court that ATL-Shanghai was the charterer. However, the doctrine of collateral estoppel, or issue preclusion, applies only where an identical issue was litigated and decided in a prior proceeding, and where the issue was necessary to a valid final judgment on the merits.  See Uzdavines v. Weeks Marine, Inc., 418 F.3d 138, 146 (2d Cir. 2005).  The Wuhan court's decision on "property preservation measures" appears to be an interim measure, not a final judgment (see Cui Aff. Ex. J.), and in any event it is not clear that

counterparty is sufficient to sustain the attachment.

## IV.     Piercing the Corporate Veil

Via Sistina challenges plaintiff's attempt to pierce the corporate veil and hold Via Sistina liable for ATL-BVI's apparent breach of the charter party on two grounds.  First, it argues that plaintiff's allegations are insufficient on their face under various relevant pleading standards. Second, it argues that the evidence submitted by the parties shows that piercing would be inappropriate.  The former argument is subject to the standards for motions to dismiss, while the latter argument, which goes only to the merits of the attachment, will be analyzed under the "reasonable grounds" standard discussed above.

"Federal courts sitting in admiralty apply federal common law when examining corporate identity." Status Int'l S.A. v. M & D Mar. Ltd., 994 F. Supp. 182, 186 (S.D.N.Y. 1998). Veil-piercing is appropriate in two circumstances: where the parent used the corporate entity to perpetrate a fraud, or where the parent has so dominated and disregarded the corporate entity's form that the entity primarily transacted the parent's business rather than its own.  See Dow Chem. Pacific Ltd. v. Rascator Mar. S.A., 782 F.2d 329, 342 (2d Cir. 1986).  Plaintiff alleges both theories here.  (Compl. ¶¶ 19, 20.)

To show that piercing is appropriate on an alter ego theory, "[a]ctual domination, rather than the opportunity to exercise control, must be shown." De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 69 (2d Cir. 1996), quoting Williams v. McAllister Bros. Inc., 534 F.2d 19, 21 (2d Cir. 1976).  "In making an alter ego determination, a court is concerned with reality and not form,

---

plaintiff's attempts to recover funds from ATL-Shanghai are inconsistent with its contention that ATL-BVI, ATL-Shanghai and Via Sistina are all, in reality, the same company.  (See 2d McNamara Aff. ¶¶ 10-16.)  Accordingly, collateral estoppel does not apply.

and with how the corporation operated.  Unlike the theory of agency, which interprets a

contractual relationship, alter ego examines the actual conduct of the parent vis-á-vis its

subsidiary." <u>Bridas S.A.P.I.C. v. Gov't of Turkmenistan,</u> 447 F.3d 411, 416 (5th Cir. 2006)

(internal citations, alterations and quotation marks omitted).

     **A.**     **Sufficiency of Plaintiff's Veil-Piercing Allegations**

Via Sistina's arguments against the facial validity of the Complaint begin with the higher

pleading standard of Admiralty Supplemental Rule E(2)(a), which directs that a complaint in a

case involving attachment must "state the circumstances from which the claim arises with such

particularity that the defendant . . . will be able, without moving for a more definite statement, to

commence an investigation of the facts and to frame a responsive pleading."  Fed. R. Civ. P.,

Adm. Supp. R. E(2)(A).  (<u>See</u> D. Mem. at 5.)  "Ordinary notice pleading does not satisfy the

stringencies of these rules."  <u>Puerto Rico Ports Auth. v. Barge Katy-B</u>, 427 F.3d 93, 105 (1st Cir.

2005).

Although the pleading standard is higher in admiralty cases in which an attachment is

sought than in other civil cases, Via Sistina can hardly argue that it has been unable to

commence an investigation of the facts and frame a responsive pleading, because it has already

done both.  Moreover, the relevant allegations concern Via Sistina's own corporate relationships

and practices, so there is no apparent reason why it should have difficulty investigating

plaintiff's claims without more specifics than are provided in the Complaint.  Accordingly, Via

Sistina's argument that plaintiff has failed to meet the standards of Supplemental Rule E(2)(a) is

unpersuasive.

Via Sistina next argues that plaintiff's allegations are insufficient to support an alter ego

theory of veil-piercing.  (D. Mem. at 6-7.)  Plaintiff alleges that:

> At all material times there existed such unity and ownership and
> interest between [ATL-BVI] and [Via Sistina] that no separation
> exists between them, and [Via Sistina] is the alter ego of [ATL-
> BVI] in that (a) [ATL-BVI] receives charter hire and freights
> through the instrumentality, front and conduit of [Via Sistina]; and
> (b) the monies, funds, and property purporting to belong to [Via
> Sistina] were and still are intermingled and commingled with the
> assets of [ATL-BVI].

(Compl. ¶ 19.)  Via Sistina protests that plaintiff "does not specify *which* charters had hire or

freight that was allegedly diverted wrongfully . . . ; or exactly *which* corporate funds have been

commingled; or the *method* of that alleged intermingling."  (D. Mem. at 6-7.)  This level of

specificity, however, is not required to survive a motion for judgment on the pleadings.  Plaintiff

need only allege sufficient facts to support an inference that Via Sistina has so dominated and

disregarded the ATL-BVI's form that ATL-BVI primarily transacted Via Sistina's business

rather than its own.  It has done so.

    Although the Complaint fails to give examples of commingling and diversion of funds,

the allegations in the Complaint suggest a regular practice of ATL-BVI's receiving charter hire

and freights through Via Sistina, and commingling funds.  Plaintiff makes clear that this is its

position in the affidavit of Francis McNamara, attached to its opposition to the present motion,

which asks the Court to infer from the evidence before it that "the revenues of ATL-BVI are

*always* diverted to [Via Sistina]."  (McNamara Aff. ¶ 21.)  A general practice of diverting

revenues and commingling funds is sufficient to show alter ego liability, because it indicates, for

financial purposes at least, total disregard of the corporate form.  Accordingly, plaintiff's

allegations are sufficient, and the motion for judgment on the pleadings will be denied.[8]

**B.      Reasonable Grounds for Sustaining the Attachment**

Aside from the challenge to the adequacy of the allegations in the complaint, Via Sistina argues that plaintiff's evidence of alter ego liability is insufficient to show reasonable grounds why the attachment should not be vacated.  Plaintiff, however, has produced sufficient evidence suggesting that funds payable to ATL-BVI (and, for that matter, ATL-Shanghai) are routinely diverted to Via Sistina in disregard of the companies' separate corporate forms.  (McNamara Aff. ¶¶ 14-19.)  For example, plaintiff submits a charter party for the M/V Butet showing ATL-BVI as owner and Wood Star Jaya SDN BHD ("Wood Star") as charterer (McNamara Aff. Ex. 5), and an invoice from ATL-BVI directing that the funds due under that charter party be paid to Via Sistina.  (McNamara Aff. Ex. 6.)

Via Sistina argues that Wood Star was told to pay funds to Via Sistina, instead of ATL-BVI, because of legitimate debts owed to Via Sistina by the undisclosed principal for which ATL-BVI acted in that transaction.  (D. Supp. Reply. at 10-11; McNamara Aff. ¶¶ 15-17.)  It does not, however, explain why the transaction would be structured in such a way as to disregard

---

[8] Via Sistina also argues that the allegations in the Complaint are inadequate in light of Federal Rule of Civil Procedure 9(b), which requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Via Sistina notes that plaintiff's allegations of fraud are cursory, as indeed they are.  The complaint contains only one sentence on this issue: "SSL has been used by ATL to defraud the creditors of ATL and other third parties, through the device[,] artifice and subterfuge of interposing SSL between ATL and its creditors and third parties."  (Compl. ¶ 20.)  In light of the conclusion that plaintiff's allegations are sufficient to support veil-piercing on an alter-ego theory, however, it is unnecessary to reach this aspect of Via Sistina's argument.  Whether or not Rule 9(b) applies to allegations of fraud in the context of veil-piercing, it clearly does not apply to allegations that relate to alter ego, and plaintiff's allegations on that subject are sufficient to support veil-piercing here.

the formalities of ATL-BVI's separate existence.

Via Sistina also argues that ATL-Shanghai, not ATL-BVI, was the charterer in this transaction, pointing out that although the charter party indicates that the owner of the Butet was ATL-BVI (McNamara Aff. Ex. 5), it has submitted statements by various parties involved in the transaction to the effect that ATL-Shanghai was the real party involved. (D. Supp. Reply at 10-11.)  These varying statements do not help Via Sistina's position.  The fact that the charter party implicates one entity, while the statements submitted point to a second and the money was directed to a third, is reason to suspect that the three faces of the trinity may in fact be one.

Plaintiff also points to two similar transactions involving ATL-Shanghai, suggesting that ATL-Shanghai too is merely an alter ego of Via Sistina.  The first involves a charter party between ATL-Shanghai and Wood Star, this one for a vessel called the M/V Buana, pursuant to which the charterer was again directed to pay Via Sistina instead of ATL-Shanghai, the owner of the vessel.  (See McNamara Aff. ¶ 15, Cui Aff. 23.)  Via Sistina submits that in this transaction, ATL-Shanghai was acting on behalf of an undisclosed principal, Akea Limited ("Akea"), which owed money to Via Sistina.  (Cui Aff. ¶¶ 22, 24.)  Because of this debt, ATL-Shanghai directed Wood Star to pay freight directly to Via Sistina, rather than to ATL-Shanghai.  (Id. ¶ 23.)  Via Sistina does not explain why the transaction was structured in this way, in apparent disregard of the formalities of independent corporate existence.

The second transaction involves a vessel called the M/V Tina.  This vessel was owned by Via Sistina and chartered to ATL-Shanghai, which then subchartered it to a company called E.A.S.T. London ("EAST.").  (See Cui Aff. ¶¶ 17-20, 2d McNamara Aff. ¶ 15.)  Both parties agree that the funds owing under the subcharter were paid directly from EAST to Via Sistina, in

15

apparent disregard of the fact that ATL-Shanghai was the subcharterer.[9]  (Cui Aff. ¶ 20.)  Again,

Via Sistina makes no attempt to explain this diversion of funds.  It claims that ATL-Shanghai

received a commission for its role in this transaction (D. Reply at 6), which suggests some

measure of independent existence, but does not directly address the structure of the transaction

itself.

The Second Circuit has identified a number of factors as relevant to the question of alter

ego, including:

> (1) disregard of corporate formalities; (2) inadequate
> capitalization; (3) intermingling of funds; (4) overlap in
> ownership, officers, directors, and personnel; (5) common office
> space, address and telephone numbers of corporate entities; (6) the
> degree of discretion shown by the allegedly dominated
> corporation; (7) whether the dealings between the entities are at
> arms length; (8) whether the corporations are treated as
> independent profit centers; (9) payment or guarantee of the
> corporation's debts by the dominating entity, and (10)
> intermingling of property between the entities.

MAG Portfolio Consultant, GMBH v. Merlin Biomed Group LLC, 268 F.3d 58, 63 (2d Cir.

2001).[10]   The allegation that ATL-BVI and ATL-Shanghai encouraged third parties to pay debts

owed to them directly to Via Sistina is highly relevant to a veil-piercing theory, because it

implicates a number of these factors, including disregard of corporate formalities, intermingling

of funds, transactions not at arm's length, and failure to treat the corporations as independent

---

[9] This transmission of funds constitutes a part of the funds attached pursuant to this
Court's March 14, 2006, order while in possession of J.P. Morgan.

[10] The Second Circuit in MAG Portfolio Consultant was applying the corporate law of
New York, which requires "complete control," see 268 F.3d at 63, which for purposes of this
analysis is not a meaningfully distinct standard from the "actual domination" required under
federal common law.  See De Jesus, 87 F.3d at 70.

profit centers.  If ATL-BVI and ATL-Shanghai were independent companies, one would expect

them to receive the revenues owed to them and then disburse those revenues as other agreements

required, rather than to allow the other parties involved to simply ignore their independent

existence.[11]

In short, the evidence that Via Sistina has routinely disregarded the corporate form of

both ATL-BVI and ATL-Shanghai is sufficient to establish a valid prima facie claim for veil-

piercing, and thus constitutes reasonable grounds to sustain the attachment.

**V.     Personal Jurisdiction**

Via Sistina's motion to dismiss for lack of personal jurisdiction rests on the sole ground

that the attachment should be vacated, and that without the attachment there is no personal

jurisdiction.  (D. Mem. at 17-18.)  Because the attachment will not be vacated, this argument is

unavailing.

**VI.    International Comity**

Finally, Via Sistina invokes the doctrine of international comity to argue that this Court

should vacate the attachment because of the previously-entered attachment order of the Wuhan

Maritime Court in China.  (See D. Mem. at 15-17.)  The order in question arises out of a dispute

between plaintiff and Butet Shipping Limited, but is directed to ATL-Shanghai.  (Cui Aff. Ex. J.)

---

[11] Plaintiff has also pointed to evidence that suggests overlap in personnel between ATL-BVI, ATL-Shanghai, and other companies.  See MAG Portfolio Consultant, 268 F.3d 58 at 63 (noting that overlap in personnel is another factor to be considered in a veil-piercing inquiry).  In particular, plaintiff argues that the same, person, "Nancy," appears to have signed documents on behalf of ATL-BVI (see McNamara Aff. Ex. 5), ATL-Shanghai (see Ting Jhung Sauy Aff. Ex. A), Butet Shipping Limited (see Cui Aff. Ex. A), and Akea Limited (see Cui Aff. Ex. T). Although this suggests that ATL-BVI and ATL-Shanghai may function as one company, it is not directly relevant to the question of whether *Via Sistina* disregarded ATL-BVI's corporate form, because there is no evidence that "Nancy" is associated with Via Sistina.

In it, the Wuhan Court concludes that ATL-Shanghai owes $351,754.61 to plaintiff.  The court therefore orders ATL-Shanghai to pay the funds it owes plaintiff into a court account, rather than to plaintiff, as security against Butet's claim.  (Id.)

International comity is "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation."  Hilton v. Guyot, 159 U.S. 113, 163-64 (1895).  Generally, concurrent jurisdiction in United States courts and the courts of a foreign sovereign does not require dismissal for reasons of international comity.  China Trade & Dev. Corp. v. M.V. Choong Yong, 837 F.2d 33, 36 (2d Cir. 1987).  Even where the doctrine applies, it is not an imperative obligation, but a matter of discretion.  See Royal & Sun Alliance Ins. Co. of Can. v. Century Int'l Arms, Inc., No. 05-5134-cv, slip op. at 5 (2d Cir. Oct. 10, 2006).  Given the existence of factual questions as to whether ATL-Shanghai and ATL-BVI are substantially the same party, see id. at 9-10 (noting that litigation is not considered parallel for purposes of international comity abstention unless the parties are substantially the same), and given that Via Sistina has identified no additional reasons for international comity abstention here, see id. at 11-12 (noting that even where there is parallel litigation, additional circumstances must be present outweighing the district court's general obligation to exercise its jurisdiction), it would be inappropriate to apply the doctrine of international comity here.

## CONCLUSION

For the foregoing reasons, Via Sistina's motion (Doc. #18) for an order vacating the order of attachment and dismissing the complaint is denied.

SO ORDERED.

Dated: New York, New York
October 23, 2003

GERARD E. LYNCH
United States District Judge

19